UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jeannie M. B., | Case No. 21-CV-0438 (JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jeannie M. B. seeks judicial review of a final decision by the Defendant Commissioner of Social Security ("Commissioner") which denied her application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 27) and Defendant's Motion for Summary Judgment (Dkt. No. 29). For the reasons set forth below, the Court denies Plaintiff's motion, grants the Commissioner's motion, and affirms the final decision.

Plaintiff raises a single issue in her motion and accompanying memorandum—that the ALJ incorrectly evaluated an opinion on Plaintiff's mental health issues offered by Plaintiff's treating chiropractor, Jonathan Herbert, DC. Because of this focus, after giving a general overview of the case, the Court concentrates its analysis on Plaintiff's mental health concerns, specifically the interaction between Plaintiff's chronic pain and cognition as well as Dr. Herbert's opinion about that interaction.

**I.      Background**

Plaintiff applied for DIB on May 1, 2018, asserting that she became disabled on March 1, 2017. (Soc. Sec. Admin. R. (hereinafter "R.") 180.)[1] Plaintiff's allegedly disabling conditions were central sensitization, fibromyalgia, post-Lyme's disease, depression, anxiety, post traumatic stress disorder, headaches, arthritis and bursitis, chronic pain, and status post fractured left hand. (R. 206.) Plaintiff's last insured date for DIB is December 31, 2023. (R. 10.)

Plaintiff's DIB application was denied on initial review on July 26, 2018 (R. 120) and on reconsideration on September 11, 2018 (R. 125). An Administrative Law Judge ("ALJ") held a hearing at Plaintiff's request on January 23, 2020, in Duluth, Minnesota. (R. 10.) Plaintiff was represented at the hearing by a non-attorney advocate. (*Id.*) At the outset of the hearing, the ALJ granted Plaintiff's motion to amend her alleged disability onset date to October 24, 2017. (R. 43.)[2]

The hearing began with an itemization for the ALJ by Plaintiff's advocate of Plaintiff's conditions: fibromyalgia, chronic pain, bilateral knee pain, osteoarthritis,

---

[1] The Social Security administrative record is filed at Dkt. No. 22. The record itself is consecutively paginated, and for convenience and ease of use the Court cites to the Social Security Administration's pagination rather than the Court's docket number and page.

[2] At the hearing, the ALJ orally recited that Plaintiff's last-insured date was December of 2022. (R. 45.) This appears to be an inadvertent error, as the ALJ's written decision, which carefully analyzes Plaintiff's earnings record, concludes that her last insured date was December 31, **2023**. Because the written decision is more thorough than the oral statement, the Court accepts that Plaintiff's last insured date was December 31, 2023. The date last insured does not matter in this case anyway, because Plaintiff's claimed disability began before both December of 2022 and before December 31, 2023.

bilateral hip pain, knee pain, shoulder pain, low back pain, and chronic fatigue. (R. 45–46.) The advocate stated that Plaintiff had had two MRIs of her back and injections (the precise type was not specified) for her knee pain. (R. 45.) The advocate summarized the attempts that had been made at therapy for Plaintiff's chronic pain, which included injections, referrals to the Mayo Clinic, and a neuropsychological exam. (R. 45–46.) None of those helped. (R. 46.)

At the hearing, Plaintiff testified that the greatest contributor to her pain was her back condition. (R. 56.) She stated that the pain is so severe that it causes cognitive difficulties. (*Id.*) Plaintiff also testified, when questioned by the ALJ, that she has knee pain that makes it difficult for her to climb stairs or stand for an extended period. (*Id.*) She also testified that she has "joint pain, I have swelling in my hands and feet, I have daily headaches, sometimes all day headaches, neck, definitely my back." (R. 57.) Plaintiff further testified that she is not currently working and that she stopped working in 2016 after fracturing her left hand. (R. 49.) Plaintiff had a plate and screw put into her hand after the break, but this did not totally heal her hand. (R. 55.) She has limited left hand function and very little strength in that hand. (*Id.*) As Plaintiff testified, "I drop stuff a lot." (*Id.*) She testified to severe pain in her left hand. (R. 54.) Plaintiff testified that she had "plantar plate tears" in her feet (R. 54) that were another source of pain (R. 58). Plaintiff also testified that she sees a counselor. (R. 58–59.) While the type of counselor was not explored at the hearing before the ALJ, other evidence in the record indicates that Plaintiff sees this counselor for psychotherapy. (R. 930, 935–63.)

3

Plaintiff testified that she cannot drive for extended periods because her back pain becomes "unbearable." (R. 48.) Her upkeep of her residence appears to be limited to short periods of mowing the lawn using a riding mower. (R. 60.) To get other chores done, she asks her boyfriend to do them, and if he is not able to help, Plaintiff hires a neighbor. (*Id.*) Using a special chair, Plaintiff is also able to fish on the lake outside her residence. (R. 59.) Plaintiff's chief concern, and the primary reason she states she cannot work, appears to be the effect that her chronic pain has on her mental state. In Plaintiff's words, "[w]hen I'm extremely sore, that's where the cognitive stuff just goes. My memory, my concentration. I'll twist words, I can't find words, my thinking ability just -- it just goes and that's what the pain does." (R. 56.)

After Plaintiff testified, the ALJ heard testimony from vocational expert Kimberley Eisenhuth. The ALJ asked Ms. Eisenhuth to consider a hypothetical person of Plaintiff's age and education, but who would be limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, could sit for 6 hours, stand and walk for 6 hours, and could not handle or finger with the left, non-dominant, hand any more than frequently. (R. 69.) The ALJ also hypothesized certain other limitations on activities like climbing ropes that need not be repeated here. Ms. Eisenhuth testified that the hypothetical person described by the ALJ could not do any of Plaintiff's past jobs. (R. 69–70.) However, such a person could work as a mail clerk, routing clerk, or garment sorter, and, Ms. Eisenhuth testified, there were jobs for those occupations in the national economy. (R. 70.) The ALJ then changed the hypothetical, lowering the frequency of handling or fingering with the left upper extremity to occasional. (R. 71.) Ms. Eisenhuth responded by testifying that this

4

stricter limitation would eliminate from consideration the three jobs she had testified were available if handling or fingering could be performed frequently, but that other jobs, as an usher, a page, or an accounts investigator, were available and could be performed. (R. 71.)

The ALJ issued a written decision on February 13, 2020, determining that Plaintiff was not disabled. (R. 30.) The Social Security Administration established a sequential, five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If at any step the ALJ is able to find a claimant disabled or not disabled at that step, the process is halted. *Id.* § 404.1520(a)(4). The ALJ would terminate the process, make a finding the claimant was disabled or not disabled, and not go on to the next step. *Id.*

Pursuant to the five-step sequential analysis, at the first step the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 24, 2017. (R. 12.)

At the second step, the ALJ found that Plaintiff had severe physical impairments of "left hand fracture status post open reduction internal fixation and hardware removal, left lateral epicondylitis, spondyloarthropathy syndrome, bilateral knee osteoarthritis, bilateral hip degenerative joint disease, fibromyalgia, a headache disorder, [and] a chronic pain syndrome." (R. 13.) The ALJ also found severe mental impairments of "generalized anxiety disorder, major depressive disorder, attention deficit disorder (ADD), and posttraumatic stress disorder (PTSD)." (*Id.*)

At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 14.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC").[3] As part of that assessment, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. (R. 18.) The ALJ noted that the Plaintiff's course of treatment was "generally conservative and . . . does not suggest the degree of distress and impairment suggested." (R. 26.) In particular, the ALJ further observed that the Plaintiff was never treated as an inpatient, never underwent surgery, and did not go to the Emergency Department frequently. (*Id.*) The ALJ also found the Plaintiff's activity level inconsistent with her claimed symptoms. Plaintiff drives, shops, prepares her own meals, does light household cleaning, can ride a lawnmower for a short time, and manages her own finances. (R. 26.) She socializes with friends, sees her grandchildren weekly, and can tolerate some driving. (R. 27.)

Finally, the ALJ gave no particular weight, including controlling weight, to any prior medical opinions or prior administrative medical findings. (R. 27.) Focusing on the opinion at issue in this case, that of Plaintiff's chiropractor, Jonathan Herbert, DC, the ALJ stated that the Commissioner of Social Security does not consider a chiropractor to be an acceptable medical source. (*Id.*) In addition, the ALJ found that Dr. Herbert opined beyond his chiropractic expertise when Dr. Herbert stated it was his opinion that the Plaintiff's pain from her broken left hand and subsequent surgery symptoms made it difficult for her to focus on tasks, be productive at work, and be dependable. (*Id.*) Dr. Herbert also opined that

---

[3] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

Plaintiff's symptoms may make it difficult for Plaintiff to interact with co-workers (although Dr. Herbert conceded he had not observed that from Plaintiff). (*Id.*) Not only did the ALJ find that Dr. Herbert's opinion exceeded the expertise of a chiropractor, the ALJ also noted that Dr. Herbert's opinion was internally inconsistent, when he stated, despite his claims about Plaintiff's diminished cognition and memory, that she had been more clear-headed lately. (R. 28.)

> Ultimately, the ALJ found that Plaintiff had the RFC to:
>
> perform light work as defined in 20 [C.F.R. §] 404.1567(b) except frequent handling and fingering with the left, non-dominant hand; no power gripping, torqueing or twisting with the left hand; able to climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance frequently, and stoop, kneel, crouch and crawl occasionally; no exposure to unprotected heights or moving mechanical parts; and routine and repetitive tasks that are not fast-paced such as that found in assembly-line jobs.

(R. 17.) With this RFC, the ALJ concluded, Plaintiff could not perform her past employment. (R. 28.) Thus, the ALJ proceeded to step five, where the ALJ determined that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy. (R. 29.) Consequently, the ALJ found that Plaintiff was not disabled. (R. 30.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review. (R. 1.)

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. She argues a single point—that the ALJ erred when evaluating Dr. Herbert's opinion. Plaintiff contends it was error for the ALJ to state that a chiropractor

7

is not recognized as an acceptable medical source by the Social Security Commission and also contends that although the ALJ found opinions on mental capacity to be beyond the scope of a chiropractor's expertise, the ALJ nevertheless made use of a statement by Dr. Herbert that the Plaintiff had episodes of clear-headedness as support for the ALJ's conclusion that the Plaintiff was not disabled. Plaintiff also disputes the ALJ's finding that Dr. Herbert's opinion that Plaintiff would need unscheduled breaks at work is inconsistent with the record. The Commissioner opposes Plaintiff's motion and states that the ALJ properly evaluated Dr. Herbert's opinion.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). This case presents a mixed question of error of law/existence of substantial evidence, because Plaintiff's contention is that the ALJ made an error of law by mis-evaluating Dr. Herbert's opinion, and that when a proper value is placed on Dr. Herbert's opinion, substantial evidence will be found to be lacking for the ALJ's conclusion that Plaintiff is not disabled.

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436

(8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

**III.   Discussion**

    **A.   Dr. Herbert's Progress Notes and Opinion**

At various points, the administrative record includes progress notes from Dr. Herbert (R. 318–50, 875–927, 1096–1155, 2920–22). Dr. Herbert also provided an opinion letter (R. 965) to Plaintiff's advocate on May 31, 2018, in which he states that he has been treating Plaintiff since 2013.[4] Dr. Herbert's notes are sparse and include neither a diagnosis

---

[4] The earliest progress notes in the administrative record appear to be from 2016 (R. 318-350).

9

nor a treatment plan. The note from April 18, 2017 is fairly typical in its information content: "Was in Florida for a day - had bad allergy reactions. Got home and had diarrhea. Got dog and cat exposure when she got home and dog exposure in Florida." (R. 926.) Under "plan" that day Dr. Herbert states that "reflex point stimulation was performed for the latissimus dorsi. Recommended supplements to support the immune system." (*Id.*) No connection is drawn between the stimulation of the Plaintiff's latissimus dorsi and her complaints of diarrhea or her "dog and cat exposure."

The relevant portion of Dr. Herbert's letter of May 31, 2018[5] is short enough to be quoted in full:

> I have been treating [Plaintiff] since October 2013 for symptoms consistent with fibromyalgia and central sensitization syndrome. Her symptoms of pain and impaired cognition have not calmed since a fall in April of 2016 which resulted in a broken left hand and multiple subsequent surgeries on the hand. These symptoms make it difficult to focus on tasks and therefore be productive at work. They also make it difficult to be dependable as she has no indication when she will experience the symptoms or their severity. She has had trouble with her memory, so following instructions may be difficult. Her problems may make it problematic to interact with co-workers, but I have not seen that with Ms. Brandt. However, she would need unscheduled breaks every day to help minimize the symptoms, and even those may not help.

(R. 965.)

---

[5] Plaintiff notes that the ALJ mis-dated Dr. Herbert's letter to 2008 and attempts to fit this into what Plaintiff apparently sees as a pattern of the ALJ mischaracterizing Dr. Herbert's opinion. But Plaintiff has come forward with nothing to indicate that the ALJ's mistake was anything but an innocent typographical error.

### B. The ALJ Correctly Concluded That Dr. Herbert was a "Medical Source" but not an "Acceptable Medical Source."

The Social Security regulations differentiate a "medical source" from an "acceptable medical source." The difference can be important because establishing a medically determinable impairment at step two of the five-step evaluation process requires "objective medical evidence,"[6] and, for the disability determination, such objective medical evidence can only come from an acceptable medical source. 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source.").

A chiropractor, such as Dr. Herbert, is not an acceptable medical source. 20 C.F.R. § 404.1502. Acceptable medical sources under this regulation include a licensed medical or osteopathic doctor, but doctors of chiropractic do not appear in the regulatory definition. Courts in the Eighth Circuit have held numerous times that chiropractors are not acceptable medical sources in the Social Security disability context. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007); *Dunlap v. Kijakazi*, No. CV 20-5185, 2021 WL 4955452, at *2 (W.D. Ark. Oct. 25, 2021); *Skiles v. Kijakazi*, No. 4:20-CV-00443-NCC, 2021 WL 3128533, at *6 (E.D. Mo. July 23, 2021).

Some Social Security regulations pertaining to acceptable medical sources were revised in 2017. Because Plaintiff's DIB claim was filed after March 17, 2017, the new regulations apply to her claim. The requirement that the existence of an impairment be

---

[6] Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption. 20 C.F.R. § 404.1529.

shown by objective medical evidence from an acceptable medical source was the same before and after the amendments, although the numbering of the relevant sections changed. *Compare* 20 C.F.R. § 404.1513 (effective Sept. 3, 2013 to Mar. 26, 2017) *with* 20 C.F.R. § 404.1521 (effective Mar. 27, 2017).

Plaintiff is flatly wrong when she states on page 14 of her memorandum that because Dr. Herbert is a licensed healthcare provider, he is an acceptable medical source. Plaintiff does not actually contend that Dr. Herbert is an acceptable medical source. Her argument proceeds by first stating the proposition that the ALJ erred by finding Dr. Herbert is not an acceptable medical source, then Plaintiff cites to regulations that define "medical source"—without the adjective "acceptable." An "acceptable medical source" and a "medical source" are different, and Plaintiff's effort to conflate them fails. Dr. Herbert is not, under either the applicable federal regulations or well-established case authority,[7] an acceptable medical source.

### C. The ALJ's Misapplication of the Fact that Dr. Herbert was not an Acceptable Medical Source was Harmless.

The ALJ observed that Dr. Herbert is not an acceptable medical source in the discussion of medical opinion evidence at the RFC assessment stage. That observation was made at the wrong step of the sequential evaluation, but the error was harmless.

Under the post-March 27, 2017 regulations, the distinction between a medical source and an acceptable medical source matters only when determining at step two

---

[7] Plaintiff cited neither the regulations, nor the controlling, contrary caselaw from the Eighth Circuit, in her brief to this Court.

whether a claimant has a "medically determinable impairment."[8] *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."); 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."). The ALJ in this case determined which category Dr. Herbert fell into as part of his analysis of Plaintiff's RFC (R. 27), not as part of his analysis of whether Plaintiff had a medically determinable impairment (R. 12–14.) The ALJ had already performed that analysis and found Plaintiff to have several severe impairments including generalized anxiety disorder, major depressive disorder, attention deficit disorder, and post-traumatic stress disorder. (R. 12-13.) While the ALJ's characterization of Dr. Herbert as not an "acceptable medical source" is accurate, it is not clear why the ALJ made that statement about Dr. Herbert at the particular point in his written decision that he did.

---

[8] Before the regulations were extensively revised in 2017, the distinction between an acceptable medical source and a mere medical source applied in more situations than it does now. "According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources." *Sloan v. Astrue*, 499 F. 3d 883 (8th Cir. 2007) (citations in original omitted). The distinction now survives only when evaluating whether a claimant has a medically determinable impairment. Only "objective medical evidence," that must come from an acceptable medical source, may be considered when that determination is being made. 20 C.F.R. § 404.1521.

The presence or absence of this statement at step two, however, does not change the accuracy of the ALJ's evaluation of Dr. Herbert's opinion as part of the RFC assessment. Because Plaintiff's claim was filed after March 17, 2017, the ALJ correctly evaluated the persuasiveness of the opinion using the factors set out at 20 C.F.R. § 404.1520c(c): (1) supportability, or whether Dr. Herbert's opinion was undergirded by relevant, objective medical evidence; (2) consistency, that is, whether Dr. Herbert's conclusions were consistent with the evidence from other medical and non-medical sources in the case; (3) whether there was a treating relationship between Dr. Herbert and Plaintiff, and if so, how long it lasted, how frequently Plaintiff saw Dr. Herbert, and how thoroughly Dr. Herbert examined Plaintiff at each of their meetings; (4) whether Dr. Herbert specialized in the diagnosis and treatment of any of the conditions with which Plaintiff presented; and (5) any other relevant factors. The two most important of these five factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

The ALJ correctly found that Dr. Herbert's opinion that Plaintiff would need frequent breaks was not consistent with the other evidence in the record, and that his opinion regarding Plaintiff's memory and cognition was not supportable, because these opinions went beyond his expertise as a chiropractor. An opinion from a medical source specializing in the medical condition being opined about is more persuasive than an opinion from a non-specialist. 20 C.F.R. § 404.1520c(c)(4). In the final paragraph of his letter, Dr. Herbert explains his role in Plaintiff's treatment: "As a chiropractor, I use manual and low force adjusting, supplementation, and supplements to help patients." (R. 965.) There is no

14

indication from this self-description or any of Dr. Herbert's progress notes that Dr. Herbert is a specialist in mental health.

In addition, the ALJ noted that Dr. Herbert's opinion was internally inconsistent, and that Dr. Herbert opined about one matter that he conceded he had not observed. Dr. Herbert recited in the May 31, 2018 opinion letter a long list of memory and cognition issues, but then, in his treatment notes, observed that Plaintiff was clear-headed. (*Compare* R. 965 *with* R. 1139 (noting Plaintiff "[h]as been a little fuzzy with finding words today, but has noticed that she has been more clear headed lately. Thinks it is the cranial/sacral therapy.")). This disjunct between Dr. Herbert's opinion and his own medical records shows a lack of supportability for Dr. Herbert's opinion. "An ALJ may discount or even disregard the opinion of a treating physician where . . . a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Goff v. Barnhart*, 421 F. 3d 785, 790 (8th Cir. 2005) (quoting *Prosch v. Apfel*, 201 F. 3d 1010, 1013 (8th Cir. 2000)).

The ALJ's quotation of Dr. Herbert's statement about Plaintiff's clear-headedness is not, as claimed by Plaintiff, an example of "cherry picking" by the ALJ on the question of the existence of a disability. (*See* Pl.'s Mem. at 15, Dkt. No. 28.) The quotation about Plaintiff's clear-headedness occurs in a section of the ALJ's opinion in which he is evaluating Dr. Herbert's opinion as it bears on Plaintiff's RFC, and the quoted language from Dr. Herbert is not used by the ALJ at step two where the ALJ is deciding whether Plaintiff has a medically determinable impairment.

Dr. Herbert also opines that "[h]er symptoms may make it problematic to interact with coworkers *but I have not seen that with [Plaintiff]*." (R. 965) (emphasis added). Dr.

15

Herbert gives not a word of explanation about why he is offering an opinion about something he has not seen. This statement is, frankly, useless, and its inclusion, alone, seriously undercuts the persuasive value of Dr. Herbert's opinion.

As to the inconsistency between Dr. Herbert's opinion about unscheduled breaks and the rest of the medical evidence, the Court notes that Plaintiff's supporting memorandum includes a long recitation of her medical history, beginning at page 3 and continuing until page 11. (Pl.'s Mem. at 3–11, Dkt. No. 28.) Nowhere in that history does Plaintiff mention Dr. Herbert, and more importantly, nowhere does Plaintiff identify a health care provider who has opined that Plaintiff needs unscheduled breaks. Two providers are mentioned, in a single paragraph each, in the section of Plaintiff's memorandum captioned "opinion evidence" on page 11. One of these providers is Dr. Herbert. Plaintiff notes that one component of Dr. Herbert's opinion is that Plaintiff will need unscheduled breaks, but Dr. Herbert does not explain why in the letter. The only other provider whose opinion is summarized in Plaintiff's memorandum is her treating psychotherapist. Plaintiff did not identify in her memorandum evidence from the psychotherapist that Plaintiff would need to have unscheduled breaks. Finally, in the discussion section of her memorandum, Plaintiff argues that Dr. Herbert's opinion as to unscheduled breaks is supported by the fact that Plaintiff failed to show up for several medical appointments. (Pl.'s Mem. at 15.) There can, of course, be multiple reasons a person would miss an appointment, and Plaintiff does not point to any evidentiary support in the record for her theory that these appointments were missed because she has a medical need for unscheduled breaks. Plaintiff, in short, has identified no evidence in the record

that supports the functional limitation of unscheduled breaks. Dr. Herbert's opinion is therefore inconsistent with the record, and the ALJ did not err in reducing the persuasiveness of Dr. Herbert's opinion for that reason.

In sum, the ALJ's statement that Dr. Herbert is not an acceptable medical source is true, but this characterization of Dr. Herbert was made at a step of the sequential evaluation where it did not apply. However, that misapplication was harmless, because the ALJ properly evaluated Dr. Herbert's opinion in accordance with 20 C.F.R. § 404.1520c(c). The opinion was found wanting in the key areas of supportability and consistency. As one example, Dr. Herbert's offhand statement that Plaintiff needed unscheduled breaks is inconsistent with the other evidence in this case. Plaintiff has identified no other health care provider who found she needed unscheduled breaks.

## IV. Conclusion

Based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 27) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Dkt. No. 29) is **GRANTED**.

3. The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: July 20, 2022         *s/ John F. Docherty*
                            JOHN F. DOCHERTY
                            United States Magistrate Judge